UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 3:24-cr-414 |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| I'sah bin Hashim, | |
| Defendant. | |

## I. INTRODUCTION AND BACKGROUND

On November 6, 2024, Defendant I'sah bin Hashim was indicted for one count of illegally possessing a machinegun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). (Doc. No. 15). The Indictment alleges that on August 16, 2024, bin Hashim knowingly possessed two machine gun conversion devices with no serial numbers. (*Id.* at 1).

Bin Hashim has filed a motion to dismiss the sole count of the Indictment on the ground that it violates the Second Amendment. (Doc. No. 27). The government filed a brief in opposition. (Doc. No. 28). Bin Hashim did not file a brief in reply, and I took the motion under advisement on April 25, 2025, consistent with the briefing schedule I set for the motion. (*See* non-document order dated April 18, 2025). For the reasons that follow, I deny bin Hashim's motion.

## II. ANALYSIS

"A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II.

Beginning with *United States v. Heller*, 554 U.S. 570 (2008), the Supreme Court interpreted the Second Amendment to protect "an individual right to keep and bear arms." *Id.* at 595. More

recently, in *New York State Rifle and Pistol Association v. Bruen*, 597 U.S. 1 (2022), the Supreme Court "clarified the analytical framework that applies to Second Amendment challenges." *United States v. Williams*, 113 F.4th 637, 644 (6th Cir. 2024). Courts may no longer employ a "combination of historical analysis and means-ends scrutiny," as many did before. *Id.* at 643. Instead, courts must "first ask whether 'the Second Amendment's plain text' covers" the relevant conduct. *Williams*, 113 F.4th at 648 (quoting *Bruen*, 597 U.S. at 24).

If it does, "the Constitution presumptively protects it," and "[t]he government must then justify its regulation of that conduct by demonstrating that the regulation 'is consistent with the Nation's historical tradition of firearm regulation.'" *Id.* In *United States v. Rahimi*, which rejected a facial challenge to the federal ban on the possession of a firearm by a convicted felon in 18 U.S.C. § 922(g)(8), the Supreme Court provided further guidance on how lower courts should apply the history-and-tradition step of the *Bruen* analysis. *See United States v. Rahimi*, 602 U.S. 680, 700 (2024).

Bin Hashim raises a facial challenge to § 922(o). He states that "the statute he is charged with violating is unconstitutional" because "the government cannot establish that the firearm regulation Mr. Hashim has been accused of violating is consistent with this Nation's historical tradition of firearm regulation." (Doc. No. 27 at 1, 2). To succeed on a facial challenge, bin Hashim must show that § 922(o) violates the Second Amendment "in all its applications." *Bucklew v. Precythe*, 587 U.S. 119, 138 (2019). "[I]f [§ 922(o)] is constitutional in even just one of its applications," his facial challenge "will fail." *Williams*, 113 F.4th at 643 (citing *United States v. Rahimi*, 602 U.S. 680, 693 (2024)) (additional citation in *Rahimi* omitted). As I explain below, bin Hashim's facial challenge fails at *Bruen*'s first step, so it is unnecessary to proceed to the second step.

With exceptions not relevant here, Section 922(o) provides: "it shall be unlawful for any person to transfer or possess a machinegun." 18 U.S.C. § 922(o)(1). "Machinegun" means "any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically more

2

than one shot, without manual reloading, by a single function of the trigger." 26 U.S.C. § 5845(b); *see* 18 U.S.C. § 921(a)(24) (adopting the definition of "machinegun" in 26 U.S.C. § 5845(b) for use in Chapter 18 of the United States Code). This definition also includes the "frame or receiver" of a machinegun, "any part" designed to convert a weapon into a machinegun, and "any combination of parts from which a machinegun can be assembled," if they are in a person's control or possession. 26 U.S.C. § 5845(b). As the Supreme Court has put it, "once [a machinegun's] trigger is depressed, the weapon will automatically continue to fire until its trigger is released or the ammunition is exhausted." *Staples v. United States*, 511 U.S. 600, 602 n.1 (1994).

*Bruen, Rahimi*, and the Sixth Circuit's recent decision in *Williams* focused on *Bruen*'s second step, which analyzes the historical tradition of firearm regulation in the United States. *See Bruen*, 597 U.S. at 31-32; *Rahimi*, 602 U.S. at 690-92; *Williams*, 113 F.4th at 648-50. All three cases built on *Heller*'s foundational holding that the Second Amendment protects an individual—rather than collective—right to possess and carry firearms. *See Bruen*, 597 U.S. at 31-32; *Rahimi*, 602 U.S. at 690-91; *Williams*, 113 F.4th at 648-49. To reach its conclusion, *Heller* parsed the text of the Second Amendment itself, which is the first step of the *Bruen* analysis. *Compare Heller*, 554 U.S. at 577 *with Bruen*, 597 U.S. at 23.

In *Heller*, the Supreme Court interpreted "Arms," as used in the Second Amendment, to mean "weapons that were not specifically designed for military use and were not employed in a military capacity." *Heller*, 554 U.S. at 581. To "keep arms" or "bear arms" refers to the owning or carrying of these weapons. *Id.* at 582-84. *Heller* construed these words and phrases in light of its determination that the Second Amendment protects an "individual right to possess and carry weapons in case of confrontation," *id.* at 592, and that "self-defense . . . was the *central component* of the right itself." *Id.* at 599 (emphasis original).

Thus, the Second Amendment "'extends, prima facie, to all instruments that constitute bearable arms.'" *Rahimi*, 602 U.S. at 691 (quoting *Heller*, 554 U.S. at 582). But as *Heller*'s reading of the Amendment's text confirms, the Second Amendment does not confer "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626; *accord Hamblen v. United States*, 591 F.3d 471, 474 (6th Cir. 2009).[1] Instead, the plain text of the Second Amendment does not safeguard a right to possess weapons that an individual cannot personally carry or wield for self-defense, particularly those designed for military combat. *See Heller*, 554 U.S. at 581-84; *accord, e.g. Bianchi v. Brown*, 111 F.4th 438, 452-53 (4th Cir. 2024).

Section 922(o) bans the transfer or possession of at least some weapons *Heller* identified as being beyond the Second Amendment's scope. As other courts have pointed out, the definition of "machinegun" encompasses a broad array of instruments. *See United States v. Morgan*, Case No. 23-10047, 2024 WL 3936767, at *2 (D. Kan. Aug. 26, 2024) (noting that an "aircraft-mounted

---

[1] *Hamblen* concluded § 922(o) does not violate the Second Amendment because the defendant's challenge was "directly foreclosed by the Supreme Court, which specifically instructed in *Heller* that 'the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes.'" *Hamblen*, 591 F.3d at 474 (quoting *Heller*, 554 U.S. at 625). In *Williams*, the Sixth Circuit explained that *United States v. Carey*, 602 F.3d 738 (6th Cir. 2010), which also relied on dicta from *Heller* to uphold 18 U.S.C. § 922(g)(1)'s ban on the possession of firearms by felons, "isn't binding . . . because intervening Supreme Court precedent demands a different mode of analysis." *Williams*, 113 F.4th at 648. The Sixth Circuit has not yet definitively addressed the precedential status of *Hamblen* after *Bruen* and *Rahimi*, and district courts are bound by a published opinion of the Sixth Circuit "unless an inconsistent decision of the United States Supreme Court requires modification of the decision or [the Sixth Circuit] sitting en banc overrules the prior decision." *United States v. Thomas-Mathews*, 81 F.4th 530, 540 n.3 (6th Cir. 2023) (internal citations and quotation marks omitted). Several decisions have concluded *Hamblen* remains the law of the circuit. *See United States v. Bradley*, Case No. 1:24-cr-00056, 2025 WL 487256, at *4 (S.D. Ohio Feb. 14, 2025) (collecting cases); *United States v. Greely*, Nos. 23-1978/2042/2050, 2025 WL 1797223, at *4 (6th Cir. June 30, 2025); *accord Williams*, 113 F.4th at 663 (Davis, J.) (concurring in the judgment only because "upholding § 922(g)(1) based upon the presumption of lawfulness set forth in *Heller*, *Bruen*, and now *Rahimi*, is sufficient"). Regardless, *Heller*'s binding interpretation of the Second Amendment's text is enough to resolve bin Hashim's facial challenge to the statute here.

automatic cannon" is a "machinegun"); *DeWilde v. Att'y Gen. of Wyo.*, Case No. 24-CV-84, 2024 WL 4643681, at *3-4 (D. Wyo. Oct. 16, 2024) (same).



Source: United Kingdom National Army Museum Online Collection

For one example, consider the Vickers machine gun, pictured above. *See* Bureau of Alcohol, Tobacco, Firearms & Explosives, *National Firearms Act Handbook, Chapter 2: What Are "Firearms" Under the NFA?* at 7 (Last updated July 9, 2019) (listing Vickers water-cooled machine guns as an example of a "machinegun").[2] Vickers machine guns are tripod-mounted, water-cooled automatic weapons capable of firing over 600 rounds per minute with a single, continuous pull of the trigger. *See Vickers .303 inch Class C medium machine gun, 1910*, United Kingdom National Army Museum Online Collection (last viewed July 21, 2025).[3] Weighing nearly 30 pounds when empty of water, Vickers machine guns often require teams of 6-8 people to transport and operate. *Id.* These are military weapons designed for use in combat. *See id.*

The Vickers machine gun is a "machinegun" under § 922(o), but it is not a "bearable arm[]" under the plain text of the Second Amendment. *Heller*, 554 U.S. at 582. It is a "weapon which shoots . . . automatically more than one shot, without manual reloading, by a single function of the

---

[2] Available at https://perma.cc/B45S-MUMM.

[3] Available at https://collection.nam.ac.uk/detail.php?acc=1967-10-47-1.

trigger." 26 U.S.C. § 5845(b). And it is a military weapon that requires a team of up to 8 people to transport and operate, so it is not the kind of firearm that can be "possess[ed] and carr[ied]" by one person for self-defense purposes "in case of confrontation." *Bruen*, 597 U.S. at 33 (quoting *Heller*, 554 U.S. at 592). Therefore, it is not the kind of bearable arm the Second Amendment protects. *Cf. Bianchi*, 111 F.4th at 453 (concluding Maryland's ban on certain long guns is facially constitutional because "the Barrett .50 caliber semiautomatic rifle," which is covered by the statute, is "exactly the type of firearm" that may be banned consistent with the Second Amendment).

Courts in the Sixth Circuit to consider the issue have likewise concluded § 922(o) regulates conduct outside the Second Amendment's scope. *See, e.g.*, *United States v. Mitchell*, 734 F. Supp. 3d 702, 709 (N.D. Ohio 2024); *United States v. Douglas*, Case No. 24-20196, 2025 WL 1181786, at *3 (E.D. Mich. April 23, 2025); *United States v. Caldwell*, Case No. 1:24-cr-70, 2024 WL 2784340, at *6 (N.D. Ohio, May 30, 2024).

Courts in other jurisdictions have come to the same conclusion. The Seventh Circuit reasoned that machineguns do not "fall[] within the scope of 'bearable' Arms" "because they can be dedicated exclusively to military use." *Bevis v. City of Naperville*, 85 F.4th 1175, 1193 (7th Cir. 2023) (quoting *Heller*, 554 U.S. at 594); *accord National Assoc. for Gun Rights v. Lamont*, 685 F. Supp. 3d 63, 103 (D. Conn. 2023) (explaining that the "militaristic character of assault weapons" indicates they are not the kind of weapons facially protected by the Second Amendment). Other courts have found that machineguns are not "Arms" under the Second Amendment because they are "dangerous and unusual" weapons. *See United States v. Torrez-Diaz*, Criminal No. 23-410, 2024 WL 4870562, at *8 (D. P. R. Nov. 22, 2024) ("M-16 rifles and 'the like' are 'dangerous and unusual' and may be banned . . . [because] possession of machineguns [] is not included in the plain text of the Second Amendment"); *United States v. Berger*, 715 F. Supp. 3d 676, 686 (E.D. Pa. 2024) ("the Second Amendment does not protect machineguns because they are not in common use for lawful purposes

such as self-defense"); *United States v. Simien*, 655 F. Supp. 3d 540, 553 (W.D. Tex. 2023) ("Today, machineguns remain dangerous and unusual."). Even one of the two cases bin Hashim cites in support of his motion—which both found § 922(o) unconstitutional as applied to a particular defendant—rejected a facial challenge to the statute on this ground. *See Morgan*, 2024 WL 3936767, at *2.[4] Current jurisprudence overwhelmingly supports the conclusion that § 922(o) is constitutional on its face.

Accordingly, I find Section 922(o) prohibits the transfer or possession of least one type of firearm not covered by the plain text of the Second Amendment. Because bin Hashim has not shown § 922(o) is unconstitutional "in every case," I reject his facial challenge to the statute. *Rahimi*, 602 U.S. at 701 n.2 (citing *United States v. Salerno*, 481 U.S. 739 (1987)).

### III. CONCLUSION

For the reasons stated above, I deny bin Hashim's motion to dismiss. (Doc. No. 27).

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge

---

[4] The other, *United States v. Brown*, 764 F. Supp. 3d 456 (S.D. Miss. Jan. 29, 2025), addressed only an as-applied challenge to § 922(o).